## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NORTHWESTERN CORP., | ) | Case No. 03-12872 (JLP) |
|  | ) |  |
| Debtor. | ) |  |
| HOULIHAN, LOKEY, HOWARD & ZUKIN CAPITAL, INC., | ) ) ) |  |
| Appellant, | ) |  |
| v. | ) | Civil Action No. 05-396 JJF |
|  | ) |  |
| NORTHWESTERN CORP , | ) |  |
|  | ) |  |
| Appellee. | ) |  |

## INITIAL BRIEF OF APPELLANT

Dated: September 6, 2005

Neil B. Glassman, Esq.  (No. 2087)
Charlene Davis, Esq.  (No. 2336)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000

Richard A. Chesley, Esq.
JONES DAY
77 West Wacker
Chicago, Illinois 60601-1692
(312) 782-1525 Telephone
(312) 782-8585  Facsimile

Kevyn D. Orr, Esq.
Kevin C. Maclay, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-5560 Telephone
(202) 626-1700 Facsimile

Counsel for Appellant Houlihan Lokey
Howard & Zukin Financial Advisors, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ................................................. 2

STATEMENT OF ISSUES PRESENTED .......................................................................... 2

STANDARD OF REVIEW ............................................................................................... 2

STATEMENT OF THE CASE .......................................................................................... 3

STATEMENT OF THE FACTS ........................................................................................ 4

SUMMARY OF ARGUMENT .......................................................................................... 9

ARGUMENT ............................................................................................................... 10

CONCLUSION ............................................................................................................ 20

REQUEST FOR ORAL ARGUMENT ............................................................................... 20

CERTIFICATE OF SERVICE .......................................................................................... 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*B.U.M. Int'l, Inc.*, 229 F.3d 824 (9th Cir. 2000) ............................................................. 13

*In re Barron*, 225 F.3d 583 (5th Cir. 2000) ...................................................................... 19

*In re Benassi*, 72 B.R. 44 (D. Minn. 1987) ...................................................................... 10

*In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833 (3d Cir 1994) ................................... 15

*Matter of CS Assocs.*, 1993 WL 315656 (E.D. Pa. 1993) ............................................... 17

*In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13 (Bankr. S.D.N.Y. 1991) ............. 14, 15

*In re Federal Mogul Inc.*, 348 F.3d 390 (3d Cir. 2003) ........................................ 10, 11, 13, 16, 17

*Hayman Cash Register Co.*, 669 F.2d 162 (3d Cir. 1982) .............................................. 14

*In re Hillsborough Holdings Corp.*, 125 B.R. 837 (Bankr. M.D. Fla. 1991) ................................. 15

*In re Merry-Go-Round Enters., Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) ...................... 11, 14, 19

*Matter of Nat'l Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997) ........................................... 11

*In re Nucentrix Broadband Networks, Inc.*, 314 B.R. 574 (Bankr. N.D. Tex. 2004) ................... 19

*In re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir. 1993) .................................................... 17

*In re Temtechco, Inc.*, 1998 WL 887256 (Bankr. D. Del. 1998) ..................................... 17

*In re Texas Sec., Inc.*, 218 F.3d 443 (5th Cir. 2000) ...................................................... 13

*In re United Healthcare Sys., Inc.*, 396 F.3d 247 (3d Cir. 2005) .................................... 3

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253 (3d Cir. 1995) ...................... 3

## FEDERAL STATUTES AND RULES

11 U.S.C. § 327 ................................................................................................... 10, 16, 17

11 U.S.C. § 328 ................................................ 2, 3, 5, 6, 8, 9, 10, 11, 12, 13, 14, 16, 17,18, 19

11 U.S.C. § 330 .......................................................... 2, 6, 9, 10, 11, 12, 13, 15, 16

11 U.S.C. § 1102 ............................................................................................................... 10, 17

11 U.S.C. §1103 ........................................................................................................ 3, 10, 11, 17

28 U.S.C. § 158 ..................................................................................................................... 2

Fed. R. Bankr. P. 2014 .......................................................................................................... 3, 11

Fed. R. Bankr. P. 8001 ......................................................................................................... 2

Fed. R. Bankr. P. 8012 ......................................................................................................... 20

H.R. Rep. No. 8200 (1977) ...................................................................................................... 16

## STATEMENT OF THE BASIS OF APPELLATE AUTHORITY

This Court has jurisdiction of this Appeal pursuant to 28 U.S.C. Section 158(a) and Federal Rule of Bankruptcy Procedure 8001.

## STATEMENT OF ISSUES PRESENTED

1.    The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (Judge Peterson presiding) erred by *sua sponte* reviewing the terms and conditions of employment of Houlihan Lokey Howard & Zukin Financial Advisors, Inc. ("Houlihan Lokey") pursuant to section 330 of the Bankruptcy Code, because the Bankruptcy Court had previously (under Judge Case) approved the retention of Houlihan Lokey under the standards set forth in Section 328(a) of the Bankruptcy Code.

2.    The Bankruptcy Court abused its discretion by concluding that unforeseeable circumstances rendered the certain provisions of the Order Authorizing the Employment and Retention of Houlihan Lokey Howard & Zukin Financial Advisors, Inc. As Financial Advisor For The Official Committee Of Unsecured Creditors [Re: Docket No. 255] (the "Retention Order") (D.I. 503) "improvident" within the meaning of Section 328(a) of the Bankruptcy Code.

## STANDARD OF REVIEW

This is an appeal from the Order of the Bankruptcy Court (the "Fee Order") approving in part and reducing in part the Final Fee Application of Houlihan Lokey Howard & Zukin Financial Advisors, Inc., financial advisor to the Official Committee of Unsecured Creditors (the "Committee"). This Court reviews the Bankruptcy Court's ruling for an abuse of discretion, which occurs "if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous."

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995) (citations omitted).

Factual conclusions are judged under the "clearly erroneous" standard, while conclusions of law

are reviewed de novo. *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005).

## STATEMENT OF THE CASE

On September 14, 2003, NorthWestern Corporation, a Delaware corporation

("NorthWestern," the "Company," or the "Reorganized Debtor") filed its Chapter 11 case. On

October 1, 2003, the United States Trustee for Region 3 ("UST") appointed the Committee,

which subsequently selected Houlihan Lokey to guide it through and assist it in these chapter 11

cases. On October 17, 2003, the Committee filed its Application of Official Committee of

Unsecured Creditors of Northwestern Corporation Pursuant to 11 U.S.C. §§ 328(a) and 1103 and

Fed. R. Bankr. P. 2014, for Order Authorizing and Approving Retention and Employment Nunc

Pro Tunc of Houlihan Lokey Howard Zukin Financial Advisors, Inc. (the "Retention

Application") (D.I. 255). On October 31, 2003, the UST filed a limited objection (the "Limited

Objection") to the Retention Application, which was consensually resolved by counsel to the

Committee through the Certification of Counsel Regarding Application of the Official

Committee of Unsecured Creditors of Northwestern Corporation Pursuant to 11 U.S.C. §§ 328(a)

and 1103 and Fed. R. Bankr. P. 2014 For Order Authorizing and Approving Retention and

Employment Nunc Pro Tunc of Houlihan Lokey Howard & Zukin Financial Advisors, Inc. (the

"Certification") and a proposed form of order (D.I. 409), which was approved by the Bankruptcy

Court by order dated December 8, 2003 (the "Retention Order").

Throughout the next twelve months Houlihan Lokey submitted a total of eleven fee

applications on a regular basis, each of which was approved by the Court without objection from

any interested party or creditor. (D.I. 518, 720, 745, 897, 1086, 1347, 1618, 2042, 2147, 2338, 2398, 2632, 2633, 2896).

On October 19, 2004, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan") (D.I. 2238).

While no party, including the Fee Auditor appointed in this case or the United States Trustee, raised an objection to Houlihan Lokey's Final Fee Application, on February 10, 2005, the Bankruptcy Court held an initial hearing on Houlihan Lokey's amended and supplemented Final Fee Application and deferred ruling at that time. The Bankruptcy Court held a subsequent hearing on the Final Fee Application on April 5, 2005. On May 5, 2005, the Bankruptcy Court issued a memorandum opinion (the "Opinion" or "Mem. Op.") and Order (the "Fee Order"), reducing Houlihan Lokey's previously approved hourly fee by 50%, while awarding Houlihan Lokey the transaction fee that the Bankruptcy Court had also approved pursuant to the Retention Order (D.I. 3046).

Houlihan Lokey filed a timely appeal of the Fee Order on May 12, 2005 (D.I. 3067).

## STATEMENT OF FACTS

NorthWestern, a Delaware corporation, and its direct and indirect non-debtor energy subsidiaries comprise one of the largest providers of electricity and natural gas in the Upper Midwest and Northwestern regions of the United States, serving over 600,000 customers throughout Montana, South Dakota and Nebraska. Faced with mounting liquidity and regulatory crises, NorthWestern filed for chapter 11 in the Bankruptcy Court on September 14, 2003.

Following the appointment of the Committee, recognizing the critical need to obtain highly skilled and diligent financial advisors, the Committee filed the Retention Application,

which sought to retain Houlihan Lokey, one of the foremost financial advisory firms in the

United States. The Retention Application, both in its very title and text, clearly and

unambiguously stated that the Committee was seeking to retain Houlihan Lokey pursuant to

Section 328(a) of the Bankruptcy Code. Retention Application at 1, 8-9. Indeed, the Retention

Application explained not only the need for retention under Section 328(a), but the Retention

Application, along with the Committee's engagement letter of October 17, 2003, with Houlihan

Lokey (the "Engagement Letter") (which was annexed to the Application and subsequently to

the Retention Order) set forth those specific services that Houlihan Lokey would provide to the

Committee:

    (a)    Evaluating the assets and liabilities of the Debtor;

    (b)    Analyzing the financial and operating statements of the Debtor;

    (c)    Analyzing the business plans and forecasts of the Debtor;

    (d)    Evaluating the prospects for debtor in possession financing (if any), cash collateral usage and adequate protection therefore and the prospects for any exit financing in connection with any plan of reorganization and any budgets relating thereto;

    (e)    Providing such specific valuation or other financial analyses as the Committee may require in connection with the Cases;

    (f)    Assessing the financial issues and opinions concerning (a) the sale of the Debtor, or any of its assets, and (b) any plan of reorganization (collectively, the "Plan");

    (g)    Analyzing and explaining the Plan to various constituencies; and

    (h)    Providing testimony in Bankruptcy court, on behalf of the Committee, if necessary.

Retention Order, Ex. A at 1-2.

The Retention Application and Engagement Letter also set forth in detail the

consideration that would be paid to Houlihan Lokey: a $175,000.00 per month flat fee (the

"Monthly Fee"); reimbursement for reasonable out-of-pocket expenses; and an additional cash payment to be calculated according to a formula laid out in the Engagement Letter and to be paid upon the consummation of a Transaction as defined in the Engagement Letter (the "Transaction Fee"). As explained in the Retention Application, the fees sought to be charged by Houlihan Lokey were comparable to fees charged in similar engagements, and were thus market terms and conditions of employment. Retention Application, at 8-9.

On October 31, 2003, the UST filed the Limited Objection, which was confined to questioning whether, at the given time, it was appropriate for Houlihan Lokey to be retained under Section 328(a) or whether Houlihan Lokey should be retained under Section 330 of the Bankruptcy Code. (D.I. 296). This was the only objection filed to the Retention Application, as no other interested party or creditor objected to Houlihan Lokey's proposed retention.

On November 18, 2003, counsel for the Committee filed the Certification, informing the Bankruptcy Court and all interested parties and creditors that the Committee and UST had reached a resolution of the Limited Objection (D.I. 409). Attached as Exhibit A to the Certification was a proposed order approved and consented to by the UST which provided that while Houlihan Lokey was expressly retained under Section 328(a), the UST alone retained the right to object to Houlihan Lokey's proposed Transaction Fee under the standard provided in Section 330(a). In relevant part, the language of the order states:

> **ORDERED**, that notwithstanding anything to the contrary herein or in the Engagement Letter, all of Houlihan Lokey's fees and expenses in this case, including, without limitation, the Transaction Fee, (as defined in the Engagement letter), shall be subject to approval by this Court under the standard set forth in Section 328(a) of the Bankruptcy Code upon proper application by Houlihan Lokey in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court; provided however, that the Office of the United States Trustee shall retain the right to object to Houlihan Lokey's request for payment of a Transaction Fee pursuant to the standard set forth in Section 330(a) of the Bankruptcy Code; ...

Retention Order, at 5.

Judge Charles G. Case entered the Retention Order on December 8, 2003. The Retention Order was served on all creditors of record and other interested parties on December 10, 2003. See December 10, 2003, Affidavit of Service (D.I. 519).

No one has questioned the fact that throughout the entirely of the chapter 11 case, Houlihan Lokey provided highly professional and quality services on behalf of the Committee. And pursuant to the Bankruptcy Court's Order, Houlihan Lokey submitted eleven fee applications on a regular basis. No objections were ever filed to any interim fee application and each fee application was approved by the Bankruptcy Court.

On October 19, 2004, the Bankruptcy Court entered an order confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan").[1] Thirteen months after filing for relief, the Company emerged from bankruptcy with a significantly de-leveraged balance sheet, a strong capital base, a streamlined corporate structure and a critical settlement with its state regulators that was approved by the Court on July 15, 2004 (D.I. 1706). By all accounts, NorthWestern's case proceeded on an extremely "fast track" and was an overwhelming success.

On November 24, 2004, Houlihan Lokey filed its Twelfth and Final Fee Application for Fees and Expenses ("Final Fee Application") (D.I. 2398), which was amended on January 21, 2005 ("Amended Final Fee Application") (D.I. 2632), and further supplemented on March 7, 2005 ("Supplemental Final Fee Application") (D.I. 2896).[2]

---

[1] On October 28, 2004, Judge Case was replaced by Judge John L. Petersen (D.I. 2286).

[2] Fee Auditor Warren H. Smith & Associates, P.C. (the "Fee Auditor") filed both a final report on January 11, 2005 ("Final Fee Auditor Report"), and an amended final report on January 28, 2005 ("Amended Final Fee Auditor Report") (D.I. 2668). Significantly, in the Amended Final Fee Auditor Report, the Fee Auditor, in declining to object to Houlihan Lokey's fees, noted that "[o]ur own observations, made during the course of this case, lead us

On February 10, 2005, the Bankruptcy Court held an initial hearing on Houlihan Lokey's Final Fee Application. Although no party, including the Fee Auditor or the UST, had objected to Houlihan Lokey's Final Fee Application, the Bankruptcy Court voiced concerns about the fees of the Debtors' and Creditors' Committee's financial advisors, and deferred ruling.

The Bankruptcy Court held a subsequent hearing on the Final Fee Application on April 5, 2005. At that hearing, the Bankruptcy Court appeared to question the necessity of Houlihan Lokey's previously-approved retention in the first place by engaging in the following dialogue with a representative of the Debtors' financial advisor, Andrew Yearly of Lazard Freres & Co LLC ("Lazard"):

> Q: [Court] Were they really necessary? At the time the Committee asked them to be appointed, did they do anything over and above what Lazard didn't do in this case for a successful reorganization?
>
> A: [Mr. Yearly] Over and above, I mean, I think they were different roles, Your Honor. We were really leading the effort whether it was with the Montana Commission or with the DIP or, again, the valuation in trying to broker a deal on the plan. Houlihan Lokey was obviously representing their group of creditors and asking questions and sort of, you know, monitoring the process and interacting with us just to make sure that the direction of the plan was going in a way they were comfortable with. So, I think they are different roles, but they did play a valuable role with their group.

Transcript of April 5, 2005, Hearing at 31 (hereinafter, "4/5/05 Tr. at ___") (D.I. 2975).

Houlihan Lokey then presented testimony at the February 10 hearing that established that, among other things: (1) Houlihan Lokey's retention was under Section 328(a) of the Bankruptcy Code, (2) Houlihan Lokey's duties ran to the Creditor's Committee, (3) the tasks provided by Houlihan Lokey included expert valuation testimony at the confirmation hearing, analyses suggesting that certain offers to buy the company were not a good idea, and

---

(continued. )

to the conclusion that the previously approved compensation terms have not been rendered 'improvident in light of developments not capable of being anticipated at the time of fixing such terms and conditions.'" *Id.* at 5.

negotiations with various parties, including the Debtor, on behalf of the interests of the

Committee, (4) those tasks were requested by the Committee, and (5) no circumstances had

arisen since the Retention Order that were unanticipated. 4/5/05 Tr. at 33-41.

Despite the totality of the evidence and in contravention of the established law, on May 5,

2005, the Bankruptcy Court issued its Opinion and Fee Order reducing Houlihan Lokey's

monthly fee by 50% and awarding Houlihan Lokey the Transaction Fee approved by the Court in

the Retention Order. Houlihan Lokey filed a timely appeal of the Fee Order on May 12, 2005.

### SUMMARY OF ARGUMENT

With no parties objecting to Houlihan Lokey's Final Fee Application, the Bankruptcy

Court, *sua sponte*, failed to properly apply the standard embodied in Section 328(a) of the

Bankruptcy Code by concluding that, in its opinion, a supposed duplication of effort, of which no

testimony was provided, could not have been foreseen at the time that the Court approved the

retention of Houlihan Lokey as financial advisors to the Committee under Section 328(a) of the

Bankruptcy Code. The Bankruptcy Court's conclusion is erroneous as a matter of law and fact.

Section 328(a) of the Bankruptcy Code provides that the previously approved market-

based terms of employment and retention agreements approved thereunder may be abrogated and

disallowed, in whole or in part, only if such terms of employment are deemed improvident based

upon developments which could not have been anticipated at the time the retention was

approved. Section 328(a) is not subject to the *ex post* reasonableness analysis embodied in

Section 330(a) of the Bankruptcy Code. Here, there were no developments which were not

capable of being anticipated at the time Houlihan Lokey's retention was originally approved and,

consequently, no basis for the Bankruptcy Court to conclude that the terms of Houlihan Lokey's

previously approved employment and retention were improvident.

**ARGUMENT**

I.     **THE BANKRUPTCY COURT ERRED BY FINDING THAT HOULIHAN LOKEY'S RETENTION AND EMPLOYMENT UNDER SECTION 328(a) OF THE BANKRUPTCY CODE WAS SUBJECT TO AN EX POST "REASONABLENESS" ANALYSIS SUCH AS IS APPLIED UNDER SECTION 330(a)**

Section 328(a) of the Bankruptcy Code provides that the Court may pre-approve fee arrangements at an early stage of the case, noting that "[t]he trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. 328(a); *In re Federal Mogul Inc.*, 348 F.3d 390, 396 (3d Cir. 2003). The Bankruptcy Code further provides that where a professional is employed pursuant to Section 328(a), the court may only change such pre-approved terms and conditions "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. 328(a).[3]

Section 328(a) and the other provisions of the Bankruptcy Code represent a rejection of the previously-existing standards of "conservation of the estate and economy of administration," as Congress determined that those standards discouraged practitioners from entering the bankruptcy field and that estates were ill-served by less able bankruptcy specialists. *In re Benassi*, 72 B.R. 44, 47 (D. Minn. 1987) (citation omitted). Section 328(a) in particular allows professionals to determine in advance what their compensation will be. Courts have recognized

---

[3] Section 330 of the Bankruptcy Code, by contrast, provides general standards that a Bankruptcy Court may utilize to assist it to determine the appropriate and reasonable compensation for, *inter alia*, professionals hired by a Debtor, such a review typically coming at the conclusion of a case. 11 U.S.C. 330; *In re Federal Mogul Inc* , 348

the importance of this goal, stating "[i]f the most competent professionals are to be available for

complicated capital restructuring and the development of successful corporate reorganization,

they must know what they will receive for their expertise and commitment.  Courts must protect

those agreements and expectations, once found to be acceptable."  *In the Matter of Nat'l Gypsum

Co.*, 123 F.3d 861, 863 (5th Cir. 1997).  *See also In re Merry-Go-Round Enters., Inc.*, 244 B.R.

327, 337 (Bankr. D. Md. 2000) (same).

In the instant case, there can be doubt that Houlihan Lokey was retained pursuant to the

provisions of Section 328(a).  First, the Retention Order itself explicitly states that the retention

application by the Official Committee of Unsecured Creditors (the "Committee") was made

"*pursuant to Sections 328(a)* and 1103 of the Bankruptcy Code."  Retention Order at 1 (emphasis

added).

Second, the Retention Order further held that the Committee was authorized to hire

Houlihan Lokey pursuant to Section 328(a) and to pay Houlihan Lokey pursuant to the terms and

conditions of the Order, the Retention Application and the attached Engagement Letter:

> **ORDERED**, that *pursuant to Sections 328(a)* and 1103 of the Bankruptcy Code and
> Rule 2014(a) of the Bankruptcy Rules, the Committee is hereby authorized to
> employ and retain Houlihan Lokey as its financial advisors effective as of October 1,
> 2003, on the terms set forth in the Application and this order, and to extent
> consistent with the Application, this Order, and the Engagement Letter; and it is
> further **ORDERED**, that Houlihan Lokey shall be compensated in accordance with
> the terms of the Engagement Letter, subject to the procedures set forth in the
> Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable
> orders of this Court.

Retention Order at 2 (emphasis added).

---

(continued...)

F.3d at 397 ("[u]nder 11 U.S.C. § 330(a)(1), such a professional may apply to receive fees from the bankruptcy
estate after the professional has rendered services to the committee.").

Third, so as to eliminate any possible doubt, the Retention Order went on to expressly note that Houlihan Lokey's fees would be subject to review by the Bankruptcy Court <u>only under the standards of Section 328(a)</u>:

> **ORDERED**, that, notwithstanding anything to the contrary herein or in the Engagement Letter, all of Houlihan Lokey's fees and expenses in this case, including, without limitation, the Transaction Fee (as defined in the Engagement Letter), shall be subject to approval by this Court *under the standard set forth in Section 328(a) of the Bankruptcy Code* upon proper application by Houlihan Lokey in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court; <u>provided, however</u> that the Office of the United States Trustee shall retain the right to object to Houlihan Lokey's request for payment of a Transaction Fee pursuant to the standard set forth in Section 330(a) of the Bankruptcy Code.

Retention Order at 5 (emphasis added).[4]

The Engagement Letter was attached as Exhibit A to the Retention Order, *see* Retention Order at 1 n.2, and the Retention Order states that "[t]he retention and employment of Houlihan Lokey by the Committee *on the terms set forth in the Engagement Letter* is necessary and in the best interests of the Debtor's estate, its creditors, and other parties-in-interest," and that "*[t]he terms of the Engagement Letter are reasonable terms of employment for purposes of Section 328(a) of the Bankruptcy Code.*" Retention Order at 2 (emphasis added). One of the terms explicitly laid out in the Retention Application and the Engagement Letter is the payment of a flat monthly fee of $175,000 per month. *See* Retention Order, Exhibit A at 2. Also laid out in the Engagement Letter is a detailed description of those services that would be provided by Houlihan Lokey. Retention Order, Exhibit A at 1-2. Those paragraphs include, among other

---

[4] No party, including the United States Trustee, objected to the payment of Houlihan Lokey's requested fees as set forth in the Retention Order, and in fact the independent Fee Auditor expressly agreed with Houlihan Lokey's position that it was entitled to those fees pursuant to the previously-entered Retention Order. *See* Fee Auditor's Amended Final Report at 13 ("we recommend approval of final fees of $4,293,750.00　　for Houlihan's services from September 30, 2003, through October 31, 2004") (D.I. 2668)

things, evaluating the assets and liabilities of the Debtor, and assessing the financial issues concerning any Plan of reorganization. *Id.*

Despite these explicit findings, in an effort to arrive at its desired result, the Bankruptcy Court concluded that "[t]he Retention Order, however, did not expressly and unambiguously state specific terms and conditions." Mem. Op. at 4-5 (D.I. 3046). Nothing could be further from the truth as the Retention Order specified that Houlihan Lokey was being retained pursuant to the specific terms and conditions of the Retention Application and Engagement Letter, and that its fees, including the Transaction Fee and the Monthly Fee, which had been negotiated by the economic parties-in-interest, were also specifically approved.[5]

Moreover, as shown above, the Retention Order literally could not have been more clear that the terms and conditions of Houlihan Lokey's employment that it was approving were subject to review only under Section 328(a). Accordingly, the Bankruptcy Court's conclusion that the language of the Retention Order was ambiguous, allegedly thereby entitling the Bankruptcy Court *ex post* to examine the "reasonableness " of the requested fees,[6] is an abuse of discretion. *See, e.g., Federal Mogul*, 348 F.3d at 397 ("A bankruptcy court may not conduct a[n] . . . inquiry into the reasonableness of [a professional's] fees and their benefit to the estate if the court already has approved the professional's employment under 11 U.S.C. § 328."), *quoting B.U.M. Int'l, Inc.*, 229 F.3d 824, 829 (9th Cir. 2000); *In re Texas Sec., Inc.*, 218 F.3d 443, 445-46 (5th Cir. 2000) ("[o]nce the bankruptcy court has approved a rate or means of payment, such as a contingent fee, the court cannot on the submission of the final fee application instead approve a 'reasonable' fee under § 330(a), unless the bankruptcy court finds that the original arrangement

---

[5] The Third Circuit has expressly held that "the notion that the amount of a professional's compensation is not a term or condition of employment under Section 328(a) is contrary to precedent interpreting that provision." *Federal Mogul*, 348 F.3d at 401 (citation omitted).

[6] Mem. Op. at 5.

was improvident due to unanticipated circumstances as required by § 328(a)"); *In re Merry-Go-Round Enters., Inc.*, 244 B.R. at 344 ("once a contingency fee agreement is properly preapproved under 11 U.S.C. § 328(a), the fee produced thereby is no longer subject to a lodestar analysis or an after the fact, *de novo*, determination of reasonableness").

The Bankruptcy Court also failed to recognize that, in the Retention Order, it had *already* found (albeit a different Bankruptcy Judge) that the terms of Houlihan Lokey's engagement were reasonable. Retention Order at 2 ("FOUND that: . . . C. The terms of the Engagement Letter are reasonable terms of employment for purposes of Section 328(a) of the Bankruptcy Code"). *See also Merry-Go-Round*, 244 B.R. at 337 ("Because Snyder, Weiner's fee agreement was expressly approved at the outset under section 328(a) as reasonable, the only issue for resolution now is whether the terms of the agreement were . . . 'improvident in light of developments not capable of being anticipated . . .' when the court approved the agreement.") (citation omitted).[7]

And, even if this were a case in which the Bankruptcy Court could apply its own *ex post* view of the "reasonableness" of Houlihan Lokey's previously-agreed fee structure -- which it simply cannot, given the operation of Section 328(a) and the Bankruptcy Court's previous findings -- the Bankruptcy Court's rationale is still inconsistent with the entire body of bankruptcy jurisprudence. The Bankruptcy Court based its fee reduction ruling on an alleged "duplication of the effort of Lazard and Houlihan Lokey," noting from the Confirmation Order that "Both Lazard Freres & Co LLC ("Lazard") and Houlihan Lokey, Howard & Zukin,, Inc. ("Houlihan Lokey") used the three standard valuation approaches" in valuing the Debtor.[8] Mem. Op. at 5, and citing *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13 (Bankr. S.D.N.Y.

---

[7] This finding is also law of the case, and should not have been disturbed. *See, e.g., Hayman Cash Register Co.*, 669 F.2d 162, 165 (3d Cir. 1982).

[8] The Bankruptcy Court also ignores the fact that it *relied* on the Committee's independent valuation in accepting that valuation range as reliable and appropriate for the Reorganization. Confirmation Order, at 27-29.

1991) which itself cites *In re Hillsborough Holdings Corp.*, 125 B.R. 837, 838-39 (Bankr. M.D. Fla. 1991).

At the outset, the Opinion simply ignores the critical fact that Houlihan Lokey's role on behalf of the Committee was obviously not confined to its valuation work. To the contrary, as set forth in the eleven fee applications, Houlihan Lokey, for example: assisted the Debtor and advised the Committee with respect to a Key Employee Retention Plan and a Management Incentives Plan; tested the Debtor's long-term financial projections; assessed strategic alternatives; analyzed potential fraudulent conveyance claims; evaluated industry prospects; analyzed the potential unwinding of the liens of secured creditors; and held settlement discussions with holders of subordinated debt. (D.I. 518, 720, 745, 897, 1086, 1106, 1347, 1472 1618, 1668, 2042, 2147, 2202, 2221, 2222, 2234, 2238, 2243, 2338, 2398, 2561, 2668, 2896 and 2975). In more than one instance, Houlihan Lokey did not see "eye to eye" with the Debtor and its advisor, and at every turn Houlihan Lokey provided the Committee with professional and independent financial advisory services.

Moreover, none of the decisions cited by the Bankruptcy Court, nor any case that Houlihan Lokey is aware of, stands for the proposition that a creditors' committee cannot retain, and compensate at a "market rate," a financial advisor of its choosing. *See Hillsborough,* 125 B.R. 837 (while noting in passing the overlapping work of three different accounting firms hired by the debtor, creditor's committee and bondholder's committee, court made no ruling whatsoever on the fees to those firms); *Drexel Burnham,* 133 B.R. 13 (nowhere addressing the appropriateness of any fees in that case). Indeed, such a finding would run counter to the strong bankruptcy policy and law of the Third Circuit that, even under Section 330, in order to attract the most skilled professionals to complex bankruptcy engagements, they must be retained on

market terms and conditions of employment. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 849 (3d Cir. 1994) ("The unambiguous policy inspiring § 330(a), expressed most clearly in the House Report accompanying House Bill 8200, H.R. 8200, 95[th] Cong., 1[st] Sess. (1977), is that professionals and paraprofessionals in bankruptcy cases should earn the same income as their nonbankruptcy counterparts.") (citation omitted). The Bankruptcy Court recognized as much in holding that Houlihan Lokey's fees were not excessive, but were "representative of the market," Mem. Opp. at 12.

More compelling, and interestingly not mentioned by the Bankruptcy Court, is the Third Circuit's opinion in *In re Federal Mogul*, 348 F.3d 390. In *Federal Mogul*, the Bankruptcy Court authorized an Equity Committee to retain a financial advisor, but capped the monthly fees that the Equity Committee's financial advisor could charge the estate on the grounds that (1) there was likely no recovery for equity holders in any event, and (2) the Equity Committee could rely on financial data gathered by the other professionals in the case. *Id.* at 394-95.[9] At the time, not only the debtors, but also the creditors committee and an asbestos committee in that bankruptcy already had their own financial professionals. *Id.* In spite of at least *three* pre-existing sets of financial professionals, the Third Circuit reversed the bankruptcy court, holding that it had not adequately explained the factual basis for its holding that, *inter alia*, the equity committee could rely on a pre-existing set of data gathered by the debtor's professionals. *Id.* at 407-08.

As in *Federal Mogul*, here no evidence was presented and thus the Bankruptcy Court made no factual findings to support its view that any alleged duplication of services by Debtors' professionals and Houlihan Lokey was "redundant," or even the extent to which Houlihan Lokey

---

[9] Notably, this was not *after* the issuance of a 328(a) order, but was part of the process of issuing one.

in actuality relied upon Debtor's professionals to avoid or limit any such theoretical redundancy. *See also Matter of CS Assocs.*, 1993 WL 315656 (E.D. Pa. 1993), at * 3 ("Begier and the Trustee had a right to rely on the Bankruptcy Court's pre-approval of the agreement and to expect that any modification would be limited to circumstances supported by evidence as required by § 328(a)").

Furthermore, as was made clear in *Federal Mogul*, and as contemplated by the Bankruptcy Code, a creditor's committee is entitled to hire its own financial professionals. 11 U.S.C. § 328(a) ("a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title"); 11 U.S.C. § 1103 (a) ("such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents"). Indeed, the Bankruptcy Code expressly allows the committee to, among other things, "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2).

The role of a committee is obviously critical, as a committee is a fiduciary of the creditors it represents, and in that role is obligated to "sometimes be adversarial [to the debtor] if it is to fulfill its role in a Chapter 11 case. . . . [t]here is simply no other entity established by the Code to guard those interests [of the creditors it represents]" and to be "a partisan which will aid, assist and monitor the debtor pursuant to its own self-interest." *In re Spm Mfg. Corp.*, 984 F.2d 1305, 1316 (1st Cir. 1993) (citations omitted); *In re Temtechco, Inc.*, 1998 WL 887256, at *18 (Bankr. D. Del. 1998) (same). It is for that very reason that the practice developed under the Bankruptcy Code is that debtors and creditors committees retain their own financial advisors to

independently analyze and separately counsel their divergent economic constituencies. Were creditors deprived of this right, as the Bankruptcy Court seems to suggest, creditors would have little choice but to rely upon the analyses completed by the debtor's advisors; in essence abrogating their fiduciary obligations. The Bankruptcy Court did not cite to, nor is Houlihan Lokey aware of, any judicial authority that counsels such an antithetical result. Indeed, it is more than ironic that the practice employed under the Bankruptcy Code played out in this case, as the Bankruptcy Court had two separate valuations to choose from, eventually selecting the valuation prepared by the Committee' advisor, Houlihan Lokey. Confirmation Order at 28-29. Thus, as the Bankruptcy Court's rationale finds no support in the factual record or the well-established law, the the Fee Order must be reversed.

## II.    THE BANKRUPTCY COURT ERRED BY FINDING THAT AN ALLEGED DUPLICATION OF SERVICES BY HOULIHAN LOKEY AND THE DEBTORS' FINANCIAL ADVISORS WAS IMPROVIDENT AND WAS A DEVELOPMENT INCAPABLE OF BEING ANTICIPATED AT THE TIME HOULIHAN LOKEY WAS RETAINED

The Bankruptcy Court also viewed the Retention Order as being "improvident", ruling that "I find improvident this duplication of services [between Houlihan Lokey and Lazard], which occurred after the retention order was entered, and thus could not have been foreseen by the Court at the time Houlihan Lokey's application was approved under section 328(a)." Mem. Opp. at 12-13. Interestingly, however, the Bankruptcy Court provided no evidentiary support for this position and the reason is simple - the Court was simply incorrect, as the services provided by Houlihan Lokey were not improvident, but were fully appropriate and typical. Indeed, it is quite telling that the Bankruptcy Court relied on the services detailed in *"their respective retention agreements,"* in finding duplication of effort. Mem. Op. at 8 (comparing services listed in Houlihan Lokey's and Lazard's retention agreements) (emphasis added). To put it

simply, the Bankruptcy Court assumed that the financial advisors did what they were engaged to do by their respective constituencies and *approved to do* by the Bankruptcy Court. Thus, even if duplication of effort did occur (a finding which the record does not support), this alleged duplication of effort was not only foreseeable, but was actually foreseen by both of the parties and the Bankruptcy Court. Such a situation cannot support the reduction of fee amounts set forth in a previously-agreed Retention Order under the plain language of Section 328(a), nor does the Bankruptcy Court cite a single case to the contrary.

In fact, the only rationale that could support the Bankruptcy Court's determination would be that *nothing* that post-dates a retention order would ever be foreseeable. Obviously, this unprecedented interpretation departs from the plain language of the statute, would effectively remove Section 328(a) from the statute, and contravenes the law. *See, e.g.,* 11 U.S.C. § 328(a) (terms of compensation can only be changed from Section 328(a) retention order where those terms are not only "improvident," but are improvident "in light of developments *not capable of being anticipated at the time of the fixing of such terms and conditions*.") (emphasis added); *In re Barron*, 225 F.3d 583, 586 (5th Cir. 2000) ("The bankruptcy court here should have relied upon the plain language of the statute rather than our shorthand reference to it. It is not enough that the developments were simply unforeseen."); *In re Nucentrix Broadband Networks, Inc.*, 314 B.R. 574, 579-80 (Bankr. N.D. Tex. 2004) (same); *Merry-Go-Round*, 244 B.R. at 337 ("[m]erely because a pretrial settlement and a recovery in the range of $185 million appeared highly unlikely when the contingency fee was approved by the court does not mean they were not capable of being anticipated").

## CONCLUSION

For the reasons stated above, Houlihan Lokey respectfully requests that the decision of the Bankruptcy Court be reversed in part and that its Final Fee Application be approved in its entirety.

## REQUEST FOR ORAL ARGUMENT

Because the issues presented in this appeal are matters of well-established law and there is no appellee, Houlihan Lokey does not believe that oral argument is required. Nonetheless, should the Court believe that oral argument will assist in the decisional process, pursuant to Federal Rule of Bankruptcy 8012, Houlihan Lokey would request that this Court hear oral argument.

Dated:  Wilmington, Delaware
      September 6, 2005

THE BAYARD FIRM

By: _____
Neil B. Glassman, Esq. (No. 2087)
Charlene Davis, Esq. (No. 2336)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Tel: (302) 655-5000

-and-

Richard A. Chesley, Esq. (I.D. No. 06240877)
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
Tel: (312) 269-1525

Kevyn D. Orr, Esq. (I.D. No. 443074)
Kevin C. Maclay, Esq. (I.D. No. 449059)
JONES DAY
51 Louisiana Ave., NW, Suite 435
Washington, DC 20001
Tel: (202) 879-5560

*Attorneys for Houlihan Lokey Howard & Zukin Financial Advisors, Inc.*

600248v1

## CERTIFICATE OF SERVICE

I, Eric M. Sutty, Esquire, hereby certify that on this 6th day of September 2005, I caused a true and correct copy of the **Initial Brief of Appellant** to be served upon the parties listed below via hand delivery to local parties and via First Class U.S. Mail upon the remaining parties.

| | |
|---|---|
| Victoria Watson Counihan, Esq.<br>William E. Chipman, Jr., Esq.<br>Greenberg Traurig, LLP<br>The Brandywine Building<br>1000 West Street, Suite 1540<br>Wilmington, DE 19801 | Mark Kenney, Esq.<br>Office of the United States Trustee<br>844 King Street, Room 2313<br>Wilmington, DE 19801 |
| Jesse H. Austin, Esq.<br>Karol Denniston, Esq.<br>Paul, Hastings, Janofsky & Walker, LLP<br>600 Peachtree Road, N.E.<br>Atlanta, GA 30308 | William M. Austin, Esq.<br>North Western Corporation<br>125 South Dakota Avenue, Suite 11<br>Sioux Falls, SD 57104-6403 |
| Alan Kornberg, Esq.<br>Talia Gill, Esq.<br>Paul, Weiss, Rifkind, Wharton & Garrison, LLP<br>1285 Avenue of the Americas, 29th Floor<br>New York, NY 10019-6028 | Warren H. Smith<br>Warren H. Smith & Assocs, P.C.<br>325 N. St. Paul, Suite 1275<br>Dallas, TX 75201 |

Eric M. Sutty (No. 4007)